UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERMINIX INTERNATIONAL CO., L.P., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV879 HEA |
| | ) | |
| ERNIE FERRARIO and TOD WILLIAMS, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on movant/plaintiff's[1] "Complaint to Vacate Arbitration Award, [Doc. No. 1].[2] Respondents/defendants oppose the "complaint." The parties have submitted their respective positions through numerous filings. For the reasons set forth below, the Motion to Vacate Arbitration Award is denied, and the Arbitration Award is therefore affirmed.

## Facts and Background

The facts of this matter are set forth in the Arbitration Award and the parties'

---

[1] For clarity and ease of reference, the Court will hereinafter refer to Terminix as movant and Ferrario and Williams as respondents.

[2] The parties spend much time arguing over the appropriateness of this matter having been filed by way of a "complaint" rather that as a motion to vacate the arbitration award. The Court will not further prolong this matter by addressing the various arguments regarding the manner in which movant has presented this case. The ultimate issue is whether the arbitration award should be vacated, which the Court addresses herein.

submissions as follows:

Respondent Williams began working for movant in 1984 and respondent Ferrario began working for movant in 1986.  Both respondents signed and entered into an Employment Agreement and an Arbitration Agreement with movant.  The Employment Agreement contained restrictive covenants which provide, *inter alia*,:

> **Restrictive Covenants**.  The Employee agrees that during the period of employment with the Company and for a period of eighteen (18) months after the Employee ceases to be employed by the Company, for any reason, whether voluntary or involuntary, the Employee will not directly or indirectly, either individually, in partnership, jointly, or in conjunction with or through the activities of any other person, firm, partnership, corporation or organization of any kind, whether as and employer, employee, consultant, agent, principal, partner, shareholder, member, corporate officer, director, manager, contract party or in any other capacity whatsoever:
> A.  offer to any person or entity of any kind, products or services similar to or competitive with the products and services offered by the Company or otherwise compete with the Company, within any county n which the Employee was assigned or performed services on behalf of the Company, during the eighteen (18) month period immediately prior to the termination of his with the Company, and outside any such county within a one hundred (100) mile radius,...
> B.  provide products or services similar to or competitive with products or services offered by the Company to any customer of the Company to which the Employee provided products or services on behalf of the Company or any potential customer of the Company that was solicited by the Employee on behalf of the Company during the eighteen (18) month period immediately prior to the termination of his employment with the Company.

The Employment Agreement further provided that the Agreement "does not limit any duties, responsibilities or obligations which the Employee may have, or any rights of the Company, under applicable law.

Movant also had in effect at the time of respondents' employment a Policy Manual which provided, *inter alia*,:

> No employees shall appropriate to his or her personal benefit any business opportunity in which the company might reasonably be expected to be interested without first making available the opportunity to the company. Any individual who fails to disclose to the company this type of knowledge and utilizes the opportunity will be legally accountable to the company for any profits that might have been realized.

Sometime in March, 2004, respondents learned that another pest control company, Antimite, might be available for sale. They entered into negotiations for the purchase of that company and tendered a $10,000 earnest deposit to the owner. They tendered their resignation to movant on March 29, 2004, and indicated to movant's Regional Vice-President at that time that they were going to purchase a pest control company. Respondents also filed articles of incorporation for a limited liability company known as Wilfer Enterprises, LLC. on March 29, 2004.

The corporate entity, Wilfer Enterprises, LLC, never purchased Antimite. Antimite was eventually sold to Kenneth Bossaller, a friend of respondent Ferrario. Wilfer Enterprises became the exclusive consultant to Antimite, effectively running

the company.

Movant brought a Demand for Arbitration against both respondents claiming violations of the Employment Agreement, and claiming that respondents had engaged in other actions which constituted a breach of their duty of loyalty and a breach of their fiduciary duty to movant.

An Arbitration Hearing was held on December 21, 2005. Witnesses presented testimony. Arguments were presented to the arbitrator through briefs.

On March 15, 2006, the arbitrator rendered his decision. He found in favor of the respondents and against movant.

Specifically, with respect to the claim of a breach of loyalty, the arbitrator found:

> Missouri does recognize that an employee owes a duty of loyalty to his or her employer while working for said employer. It also recognizes that absent a non-compete agreement, an employee who leaves said employment may compete with his or her former employer as to matters he or she was previously employed to perform. Furthermore, even prior to termination of the employment relationship, an employee can make preparations to compete as long as the employee does not use confidential information of his employer.

The arbitrator found that the evidence did not support a finding that respondents competed with Movant prior to March 29, 2004, and that they had not violated their duty of loyalty by not informing Movant of a business opportunity.

He held that respondents' actions between March 2004 though March 29, 2004 constituted preparations to compete and not actual competition.

As to movant's breach of fiduciary duty, the arbitrator found:

> One of the four elements for breach of a fiduciary duty is the existence of a fiduciary duty. After considering the evidence presented and the arguments made, I can find no fiduciary duty owed the Claimant by the Respondents. The duty of loyalty noted above does not rise to the level of a fiduciary duty. The Respondents are not corporate officers or directors of the Claimant who would have a fiduciary duty to inform the Claimant of a business opportunity before they acquire it themselves. This fiduciary duty does not attach to upper-level or mid-level managers under the Missouri law submitted. Likewise, agency principles cited by Claimant in its brief do not rise to the level of a fiduciary duty, particularly in light of the case law in Missouri, which permits preparations to compete by an employee. Furthermore, the provision cited in the personnel policy manual (Rules and Regulations, Policy Number 500) does not create a fiduciary duty where it also specifically states that it is not ". . .to be construed to constitute, a contract between The Terminix International, L.P. and any of its employees for either employment or providing any benefits" (in its <u>Introduction</u>) and where it also informs the manager to whom it is issued (on the page previous to the <u>Introduction</u>) and where it also informs the manager to whom it is issued (on the page previous to the <u>Introduction</u>) that "ANY FEDERAL, STATE OR LOCAL STATUTE OR COLLECTIVE BARGAINING AGREEMENT MADE WITH THE COMPANY WILL OVERRULE ANY POLICY INCLUDED HEREIN, SHOULD A CONFLICT ARISE." Finally, I find nothing in the Employment Agreement, [sic] which creates such a fiduciary duty.

Regarding movant's claim that respondents breached the non-competition provisions of the Employment Agreement, the arbitrator found that non-compete agreements are enforceable in Missouri to protect trade secrets and customer

contacts if they are reasonable in time and place. He further interpreted the Employment Agreements to prohibit respondents from disclosing proprietary information or obtaining such information by improper means. The arbitrator found that the evidence only indicated that respondents had access to such information and may have acquired such information during their respective tenures with the Company, not that they disclosed it or obtained it improperly. There was also no evidence that they had used such information in their consulting with Antimite.

The arbitrator also found that there was no evidence that respondents had solicited customers of movant, nor that they took a list of movant's customers. He also found that there was no evidence that any customers of movant left and went to Antimite. Finally, the arbitrator found that respondents were not in "competition" with Terminix because of the relative sizes of Terminix and Antimite. Terminix is a large nation-wide company and respondents, through their consulting company, run "just a local operation."

## **Discussion**

### Standard of Review

This case is brought under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which established "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).

Movant seeks to have the Court vacate the arbitration award based on its belief that the arbitrator disregarded applicable law.

If none of the statutory reasons for vacating an arbitration award are satisfied, an arbitration award may be set aside if it is completely irrational or evidences a manifest disregard for the law. *Lincoln Nat'l Life Ins. Co. v. Payne,* 374 F.3d 672, 674 (8th Cir.2004).[3] The Eighth Circuit has recognized these two rationales for vacating an arbitration award: First, a court can vacate an arbitration award if it is "completely irrational," which means "it fails to draw its essence from the agreement." An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intention. Second, a court

---

[3] Those bases are:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10(a).
Movant does not argue any of the statutory reasons for vacating the award are present in this matter.

can vacate an arbitration award if it "evidence[s] a manifest disregard for the law." An award manifests disregard for the law when an arbitrator clearly identifies the applicable, governing law, but then ignores it. *McGrann v. First Albany Corp.,* 424 F.3d 743, 749 (8th Cir.2005) (internal citations omitted) (quoting *Schoch v. InfoUSA, Inc. .,* 341 F.3d 785, 788 (8th Cir.2003)). Manifest disregard for the law exists when "the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Stark v. Sanberg, Phoenix, & Von Gontard, P .C.,* 381 F.3d 793, 802 (8th Cir.2004). The Eighth Circuit has "emphasized that [the "manifest disregard" doctrine] is 'extremely narrow.' " *St. John's Mercy Med. Ctr. v. Delfino,* 414 F.3d 882, 884 (8th Cir.2005) (noting that the manifest disregard doctrine is a doctrine of last resort).

When the arbitrator is exercising his remedial authority to resolve a contract dispute, "courts have no authority to disagree with his honest judgment in that respect....[A]s long as the arbitrator is even arguably acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *St. John's Mercy Med. Ctr .,* 414 F.3d at 885 (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987)). "Courts have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests on factual errors or on a misinterpretation of

the underlying contract." *McGrann,* 424 F.3d at 748. "Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Stark,* 381 F.3d at 798 (quoting *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B,* 284 F.3d 821, 824 (8th Cir.2002). A district court "may not vacate the award simply because [it] disagrees with his interpretation, unless that interpretation so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it. *Boise Cascade Corp. v. Paper Allied-Industrial, Chemical & Energy Workers, Local 7-0159,* 309 F.3d 1075, 1081 (8th Cir.2002). The district court is not permitted to substitute its remedial judgment for that of the arbitrator. *St. John's Mercy Med. Ctr.,* 414 F.3d at 885; *see also Hoffman v. Cargill Inc.,* 236 F.3d 458, 462 (8th Cir.2001).

Movant argues that the arbitrator engaged in manifest disregard for the law of Missouri when he discussed the Missouri law "in the absence of a non-compete agreement" because the parties hereto did if fact have a non-compete agreement. Movant fails to acknowledge, however, the context in which the arbitrator was discussing non-compete agreements. In setting forth the Missouri law, the arbitrator noted that absent a non-compete agreement, an employee is free to compete with his

- 9 -

or her former employer. The arbitrator was not, as urged by movant, ignoring the law as it relates to the non-compete agreement, rather, he was setting forth what the law was with regard to actions taken prior to and after termination of employment. The arbitrator found that the actions taken *prior to* respondent's departure from movant's employ did not rise to the level of a breach of loyalty because employees are free to make preparations to leave the employ as long as they do not use confidential information of the employer. The arbitrator was addressing an entirely different issue from the issue of whether the non-compete agreement had been breached. His finding is clearly his application of Missouri law regarding the breach of the duty of loyalty.

Likewise, the arbitrator's finding that respondents did not breach a fiduciary duty does not demonstrate a manifest disregard of the law. Under the Missouri law submitted to the arbitrator, he found that the positions held by respondents did not impose on them a fiduciary duty, therefore, there could be no breach. While movant argues that as upper-level and mid-level management personnel, respondents "no doubt" had a fiduciary duty to movant, it fails to cite any Missouri law that was submitted to the arbitrator establishing this proposition. The finding that there was no fiduciary duty owed does not run afoul of the Missouri law presented to the arbitrator and therefore was not a manifest disregard of the law.

Finally, movant recognizes that "[t]he arbitrator correctly found that non-compete agreements are enforceable to protect customers and customer contacts." Movant argues, however, that the arbitrator acted with manifest disregard of the law when he found that Terminix did not have an interest that is worthy of legal protection because it could not show that it lost customers to Antimite. It also argues that the arbitrator's focus on the fact that respondents did not solicit its customers or employees was not proper. This argument is precisely the type of argument that this Court cannot consider. The arbitrator recognized the validity of non-compete agreements and then proceeded to apply the terms of the agreement to the facts to arrive at his conclusion that there was no breach of the agreement. Movant is, in essence, seeking a factual review of the arbitrator's decision when it argues what the arbitrator emphasized and de-emphasized. Movant also seeks a factual review of the arbitrator's conclusion that respondents were not in "competition" with movant because of the relative sizes of both Terminix and Antimite.

As the very detailed authority clearly articulates, this Court's review of an arbitration award is extremely limited. These limits preclude the Court from engaging in the analysis advocated by movant with regard to the arbitrator's finding of no breach of the Employment. Agreement.

**Conclusion**

Under the Eighth Circuit's deferential standard of review of arbitration awards, this Court has no authority to set aside an arbitration award even if the Court finds the arbitrator erred in interpreting the law or in determining the facts. *Stroh Container Co.,* 783 F.2d at 751. There are no grounds on which the arbitration award should be vacated and instead it shall be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that movant's Complaint/Motion to Vacate Arbitration Award, [Doc. No. 1] is denied.

**IT IS FURTHER ORDERED** that the Arbitration Award entered in this matter is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 31st day of August, 2006.

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE